UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MADELYN CASANOVA,

      Plaintiff,

v.                                                      Case No:   2:18-cv-637-FtM-29MRM

NANCY BERRYHILL,
ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

     Before the Undersigned is the Complaint filed on September 25, 2018.  (Doc. 1).

Plaintiff Madelyn Casanova seeks judicial review of the final decision of the Commissioner of

the Social Security Administration ("SSA") denying Plaintiff's claim for a period of disability,

disability insurance benefits, and supplemental security income.  The Commissioner filed the

Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page

number), and the parties filed a joint legal memorandum in support of their positions.  For the

reasons set out herein, the Undersigned respectfully recommends that the decision of the

Commissioner be **REVERSED and REMANDED** pursuant to § 205(g) of the Social Security

Act, 42 U.S.C. § 405(g) for the ALJ to properly evaluate the claimant's capacity to communicate

in English.  The Undersigned finds no other basis for reversing the ALJ's decision for the

reasons set forth below.

I.      **Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

A.      **Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

B.      **Procedural History**

This matter was initiated when Ms. Casanova filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on January 15, 2016, and January 27, 2016, respectively.  (Tr. 21, 282, 286).  Plaintiff asserted an onset date of March 12, 2014. (*Id*. at 22, 24).  On March 15, 2016, Plaintiff's application was denied at the initial level and again on May 13, 2016 upon reconsideration.  (Doc. 23 at 4; Tr. 21).[1]  Plaintiff requested an administrative hearing, which was held on November 22, 2017, before Administrative Law Judge ("ALJ"), Eric Anschuetz.  (Doc. 23 at 4; Tr. 38-76).  The ALJ issued an unfavorable decision on November 22, 2017.  (Tr. 15-37).  The ALJ found Plaintiff not to be under a disability from March 12, 2014, through the date of the decision.  (*Id*. at 32).  On July 18, 2018,

---

[1] Unless otherwise noted, citations to the Docket (Doc.) refer to the document's CM/ECF pagination, not to page number at the bottom of each page.  Page citations to the transcript (Tr.) refer to the page number bolded in the right-hand corner of the transcript.

the Appeals Council denied Plaintiff's request for review.  (*Id.* at 1-8).  Plaintiff filed a

Complaint in this Court on September 25, 2018.  (Doc. 1).  This case is ripe for review.

### C.      Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant

has proven that she is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir.

2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[2]  An ALJ must determine

whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment;

(3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R.

Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform

other work of the sort found in the national economy.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237-

40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden

shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913,

915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through December 31,

2015.  (Tr. 24).  At step one of the sequential evaluation, the ALJ found that Plaintiff had not

engaged in substantial gainful activity since March 12, 2014, the alleged onset date.  (*Id.*).  At

step two, the ALJ determined that Plaintiff has the following severe impairments:  diabetes

mellitus; neuropathy; chronic kidney disease; hypertension; obesity; anxiety disorder; and

depressive disorder.  (*Id.*).  At step three, the ALJ determined that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled the severity of one of

---

[2]  Unpublished opinions may be cited as persuasive on a particular point.  The Court does not rely
on unpublished opinions as precedent.  Citation to unpublished opinions on or after January 1,
2007 is expressly permitted under Rule 31.1, Fed. R. App. P.  Unpublished opinions may be
cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d),

404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  (*Id*. at 24-26).

> At step four, the ALJ found the following:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant could lift and or carry twenty pounds occasionally and ten pounds frequently.  The claimant could stand or walk four hours in an eight-hour workday, and sit six hours in an eight-hour workday.  The claimant must have the option to alternate sitting and standing.  The claimant is limited to performing simple SVP 2 tasks.  The claimant can have occasional interaction with supervisors, coworkers, and the public balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds.  She can only occasionally reach overhead.  She should avoid concentrated exposure to extreme cold, pulmonary irritants, and unprotected heights (20 [C.F.R. §§] 404.1567(b) and 416.967(b)).

(Tr. 26).

Also at step four, the ALJ determined that Plaintiff is unable to perform any past relevant

work.  (*Id*. at 30).  At step five, after considering Plaintiff's age, education, work experience, and

residual functional capacity, the ALJ found that there were jobs that exist in significant numbers

in the national economy that Plaintiff could perform.  (*Id*. at 31).  Further, based on the

vocational expert's testimony, the ALJ found that an individual with Plaintiff's age, education,

work experience, and residual functional capacity could perform the following jobs:  (1)

assembler (DOT 706.684-022), unskilled with an SVP 2, light level of exertion; and (2)

office helper (DOT 239.567-010), unskilled with an SVP 2, light level of exertion.  (*Id*.).

The ALJ concluded that Plaintiff was not under a disability from March 12, 2014, through the

date of the decision.  (*Id*. at 32).

### D.    Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the

correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether

the findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II.   Analysis

On appeal, Plaintiff raises five issues. As stated by the parties, they are:

(1)   Whether the ALJ had the legal authority to decide the claimant's case.

(2)   Whether the Commissioner fulfilled her duty to establish there are a significant number of jobs in the national economy that the Plaintiff is able to perform.

(3)   Whether the ALJ properly evaluated the Plaintiff's capacity to communicate in English.

(4)   Whether the ALJ's RFC assessment is supported by substantial evidence.

(5)   Whether the ALJ properly assessed the claimant's alleged symptoms and limitations.

(Doc. 23 at 29). The Undersigned addresses each issue in turn.

      **A.    Whether the ALJ had the legal authority to decide claimant's case.**

Plaintiff argues that remand is warranted because the ALJ was improperly appointed pursuant to the Appointments Clause of the United States Constitution. (Doc. 23 at 29). Plaintiff relies on several Supreme Court decisions in support of her argument namely: *Lucia v. Securities and Exchange Commission* (2018), *Freytag v. Commissioner of Internal Revenue* (1991), and *Sims v. Apfel* (2000).

First, Plaintiff contends despite not raising this issue before the ALJ, she is raising it at the "earliest possible opportunity" after the Supreme Court decision in *Lucia*. (Doc. 23 at 32-33); *see Lucia v. SEC*, 138 S. Ct. 2044, 2051-56 (2018) (holding ALJ's, who were delegated the task by the SEC to preside over enforcement proceedings were "Officers of the United States," and, therefore, they are subject to the Appointments Clause). Plaintiff argues that before *Lucia* was decided, there was as shifting opinion as to the status of an ALJ and whether an ALJ was considered an "employee" or "officer of the court." (*Id*. at 32-33). Because Plaintiff included this argument in her next filing of the case, Plaintiff contends the Court should consider this argument as timely. (*Id*.).

Further Plaintiff argues this Court should consider this issue on appeal as in the Supreme Court did in *Freytag*, where the Court considered an Appointments Clause challenge for the first time on appeal in case involving an ALJ employed by the SEC. (*Id*. at 30); *see Freytag v. Comm'r*, 501 U.S. 868, 879 (1991). Plaintiff also relies on the Supreme Court's holding in *Sims* by noting that there is "no SSA statute or regulation [that] states that an issue is forfeited on judicial review if not raised at the administrative level." (*See id*. at 31-32) (citing *Sims v. Apfel*, 530 U.S. 103, 108 (2000))). In response the Commissioner argues that Plaintiff forfeited her

Appointments Clause challenge when she failed to raise it before the ALJ or Appeals Council. (Doc 23 at 35).  Because, Plaintiff did not assert this challenge timely, the Commissioner contends that her claim should be dismissed.  (*Id*. at 43).

In this case, the Undersigned finds that Plaintiff has failed to show sufficient cause to excuse forfeiture and to show that remand is appropriate.  Unlike in *Lucia,* where the Plaintiff raised the Appointments Clause challenge before the SEC, Plaintiff did not raise this argument at the agency level before the ALJ or the Appeals Council.  *See Lucia*, 138 S. Ct. at 2044, 2050. Plaintiff here raises the challenge for the first time before this Court and therefore, the Undersigned finds the issue has been waived.  *See Wagner v. Berryhill*, No. 2:18-cv-285-FtM-UAM, 2019 WL 2724017, at *7 (M.D. Fla. Jul. 1, 2019) ("Because Plaintiff did not raise her Appointments Clause challenge at any point during the administrative proceedings, the Court finds that the issue is waived."); *see also Abbington v. Berryhill*, No. 1:17-00552-N, 2018 WL 6571208, at *2 (S.D. Ala. Dec. 13, 2018) (listing cases in which district courts have held that Appointments Clause challenges to Social Security ALJs are forfeited when the claimant fails to raise the issue at the administrative level.).

Further, the Undersigned finds that Plaintiff's argument that her challenge is timely based on *Freytag* unpersuasive.  Firstly unlike in *Freytag*, Plaintiff's contentions do not merit this court to excuse Plaintiff's challenge is untimely.  *See Freytag*, 501 U.S. at 879 (noting the exercise of direction to review and Appointments Clause challenge for the first time on review was a "rare case").[3]

---

[3] "Appointments Clause claims, and other structural constitutional claims, have no special entitlement to review.  A party forfeits the right to advance on appeal a nonjurisdictional claim, structural or otherwise, that he fails to raise at trial. . . . [A]ppellate courts may, *in truly exceptional circumstances* exercise discretion to hear forfeited claims[.]"  *Freytag v. C.I.R.*, 501

The Undersigned also finds Plaintiff's argument relying on the Supreme Court's decision in *Sims* similarly unpersuasive. While in *Sims* the Supreme Court explained claimants need not "exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues" the Court also explicitly noted, "whether a claimant must exhaust issues before the ALJ is not before us." 530 U.S. at 111, 108. Importantly, subsequent to the Supreme Court's decision in *Sims*, federal courts have not extended the holding to excuse the failure to raise an issue before the ALJ. *See Burr v. Comm'r of Soc. Sec.*, No. 5:18-cv-518-Oc-18PRL, 2019 WL 3821572 at, *4 (M.D. Fla. May 17, 2019) ("The vast majority of courts that have considered the issue of forfeiture have concluded that a plaintiff/appellant forfeits an Appointment Clause challenge to an ALJ's decision by failing to raise it before the Commissioner."); *see Shalibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) (declining to extend *Sims* to issue not raised before the ALJ). Moreover, after the decision in *Lucia*, Court's in the Eleventh Circuit, have consistently held that a Plaintiff forfeits her right to an Appointments Clause challenge when failing to raise the constitutional challenge at the administrative level. *See, e.g., Valle-Roman v. Comm'r of Soc. Sec.*, No. 6:18-cv-1158-Orl-TBS, 2019 WL 1281171, at *2 (M.D. Fla. Mar. 20, 2019) (holding "[p]laintiff forfeited her Appointments Clause argument because she failed to raise it at the administrative level"); *see also Abbington*, 2018 WL 6571208, at * 6 ("[T]he undersigned finds that [Plaintiff] was required to raise her Appointments Clause challenge at least to the ALJ for it to be a "timely challenge" on judicial review."); *Vidrine v. Saul*, No. 1:18-00172-N, 2019 WL 2606852, at *5 (S.D. Ala. Jun. 25, 2019) (concluding that Plaintiff forfeited his Appointments Clause challenge by not raising it at the

---

U.S. 686, 893-94 (1991) (Scalia, J., O'Connor, J., Kennedy., Souter, J., concurring) (emphasis added).

administrative level, and there was not sufficient cause to excuse the forfeiture); *Wagner*, 2019 WL 2724017, at *7 ("Because Plaintiff did not raise her Appointments Clause challenge at any point during the administrative proceedings, the Court finds that the issue is waived.").

Further, the Undersigned notes this Court has recently rejected a similar argument where a claimant relied on the Supreme Court ruling in *Sims* to make an Appointments Clause challenge for the first time before this Court.  United States Magistrate Judge Douglas N. Frazier stated, "*Sims* concerned only whether a claimant must present all relevant issues to the Appeals Council to preserve them for judicial review; the [Supreme] Court specifically noted that '[w]hether a claimant must exhaust issues before the ALJ is not before us.'"  *Wagner*, 2019 WL 2724017, at *8 (rejecting Plaintiff's argument that her Appointments Clause challenge was not untimely; noting "because the issue is whether Plaintiff's challenge is timely being presented to this Court for the first time, *Sims* is not applicable").  The Undersigned agrees with this analysis. Thus, because Plaintiff failed to raise the invalidity of the ALJ's Appointments at the administrative level, and she is presenting this challenge to this Court for the first time, *Sims* does not apply.  *See Wagner*, 2019 WL 2724017, at *8; *see also Abbington*, 2018 WL 6571208, at *2.  Because Plaintiff has failed to show that her challenge was timely, the Undersigned recommends that remand based on Plaintiff's Appointments Clause challenge be denied.

> **B.    Whether the Commissioner fulfilled her duty to establish there are a significant number of jobs in the national economy that the Plaintiff is able to perform.**

Plaintiff appears to argue that the ALJ failed to meet his obligation to resolve an apparent conflict between the testimony of the VE and the Dictionary of Occupational Titles (DOT). (Doc. 23 at 41).  Plaintiff contends that the VE failed to provide "job incidence data" for each particular job code named under the DOT.  (*Id*.).  Plaintiff states, "[i]nstead, he readily admitted

to providing job incidence data for the Standard Occupational Classification "SOC" code under which the DOT code for each of the named jobs falls." (*Id*.). Plaintiff explains the problem with this approach as follows, "[t]here are only 840 SOC codes whereas there are over 12,000 DOT codes." (*Id*. at 44). Plaintiff appears to argue because of this failure, the ALJ did not have adequate information to determine whether there was suitable work in the national economy Plaintiff could perform. (*See id*. at 48).

In response, the Commissioner argues that the Eleventh Circuit decision in *Webster*, where the Court held that an ALJ is not required to independently investigate a conflict between the VE's testimony and job available figures, is applicable and squarely resolves this issue. (*Id*. at 49, 51); *see Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 556 (11th Cir. 2019). Further, the Commissioner contends substantial evidence supports the VE's testimony that there are significant number of jobs in the national economy Plaintiff can perform, such that the Court should affirm the ALJ's decision. (*Id*. at 51-52).

There is no bright-line rule as to what constitutes a "significant number" of jobs that an ALJ must identify. *Barros v. Colvin*, No. 8:15-cv-834-T-JRK, 2016 WL 4473186, at *5 (M.D. Fla. Aug. 25, 2016); *see Atha*, 616 F. App'x at 934-35 (11th Cir. 2015) (explaining the Eleventh Circuit has "never held that a minimum numerical count of jobs must be identified in order to constitute work that 'exists in significant numbers"); s*ee also Brooks v. Barnhart*, 133 F. App'x 669, 671 (11th Cir. 2005) (holding 840 jobs was significant). Further, unlike the situation where the VE's testimony conflicts with the DOT, there is no affirmative duty on the ALJ to independently investigate a conflict between the VE's testimony and job availability figures. *See Webster*, 773 F. App'x at 556.

The ALJ can rely on the VE's knowledge and expertise and VEs are not required to produce "detailed reports or statistics in support of their testimony."  *See Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 840 (11th Cir. 2012) (rejecting Plaintiff's argument that remand was warranted when the VE failed to explain how she reduced the number of positions to account for functional limitations).  Further, the Eleventh Circuit has held when a reasonable person would accept the VE's testimony as being adequate to support a conclusion that a Plaintiff is able to perform other work that exists in the national economy, the ALJ's step five findings are supported by substantial evidence.  *Id.*; *see Pace v. Comm'r of Soc. Sec.*, 760 F. App'x 779, 781 (11th Cir. 2019) ("The question, though, is not whether the expert's *testimony* is supported by substantial evidence.  It is whether the ALJ's *decision* is supported by substantial evidence.").

In considering Plaintiff's age, education, and work experience, the Undersigned finds the ALJ did not error in finding that work exists in significant numbers in the national economy that Plaintiff can perform.  Here, the ALJ relied on the VE's testimony and determined Plaintiff was capable of performing three jobs totaling 556,100 in the nation.  (Tr. 31, 64-66); *accord Atha*, 616 F. App'x at 934 (concluding 440 jobs in Alabama and 23,800 jobs nationally constituted a significant number).  While Plaintiff disagrees with the methodology the VE used to determine these numbers, the Undersigned finds the ALJ was permitted to rely on the VE' methodology. *See Bryant*, 451 F. App'x at 840 ("[A]n ALJ may rely on a VE's knowledge and expertise, and they do not require a VE [to] produce detailed reports or statistics in support of her testimony."); *Leigh v. Comm'r of Soc. Sec.*, 496 F. App'x 973, 975 (11th Cir. 2012) (noting "[e]ven assuming that there was an inconsistency between the VE's opinion and the DOT, the ALJ did not error in relying on the VE's opinion to determine that [Plaintiff] was not disabled").

Here the VE explained that he based his testimony on the DOT, the SOC, his experience and practice, and his job analyses for the representative jobs he identified.  (Tr. 67-68).  As to identifying individual occupations in the labor market that Plaintiff could perform, the VE testified that his testimony was based on his was his "expert opinion."  (Tr. 67-68).  The Court finds this to be sufficient.  *See Leonard v. Comm'r of Soc. Sec.*, 409 F. App'x 298, 301 (11th Cir. 2011)  ("A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required.").  Therefore, the Court does not recommend Plaintiff's case be remanded on this basis.

**C.      Whether the ALJ properly evaluated Plaintiff's capacity to communicate in English.**

Plaintiff argues the ALJ erred in concluding Plaintiff could communicate in English and therefore his decision is not supported by substantial evidence.  (Doc. 23 at 58).  Plaintiff maintains had the ALJ concluded she was not able to communicate in English, that a finding of disability would have been appropriate under the medical vocational guidelines.  (*Id*. at 58-59).

The Commissioner argues the ALJ's determination of Plaintiff's English proficiency is supported by substantial evidence.  (*Id*. at 59).  The Commissioner notes the ability to communicate in English does not establish disability in and of itself.  (*Id*.).  Therefore, the Commissioner contends the question of whether a claimant can communicate in English is relevant only as it relates to whether a claimant's English proficiency would preclude him or her from performing a job they could perform otherwise.  (*Id*.).

If the ALJ does not find a claimant disabled at one of the first three steps of the sequential process, the ALJ will consider plaintiff's residual functional capacity together with her vocational background in order to determine disability.  *See* 20 C.F.R. 404.1564(b).  ALJs are

entitled to rely on a VE's testimony to determine whether a plaintiff can return to her past relevant work. *See Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *See Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).

While a plaintiff's inability to communicate in English is not a disability in and of itself, the ALJ must consider a plaintiff's English abilities as it is considered an aspect of the vocational factor of education. *See* 20 C.F.R. 404.1564(b); 416.964(b); *see Nunez v. Comm'r of Soc. Sec.*, No: 8:15-cv-2698-T-JSS, 2017 WL 942991, at *4 (M.D. Fla. Mar. 10, 2017) ("The social security regulations make clear that the ability to communicate in English is a vocational factor of education because 'the ability to speak, read and understand English is generally learned or increased at school.'"). It is necessary for an ALJ to evaluate a Plaintiff's ability to communicate in English for the ALJ to determine whether a claimant's English proficiency would preclude her from performing a job she could otherwise perform. *See* 20 C.F.R. §§ 404.1564(b)(5), 416.964(b)(5).

To communicate in English means the ability to "speak, read, and understand English." *See* 20 C.F.R. §§ 404.1564(b)(5), 416.964(b)(5). The regulations acknowledge, "[b]ecause English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language." *See* 20 C.F.R. §§ 404.1564(b)(5), 416.964(b)(5).

The Undersigned finds the ALJ's determination of Plaintiff's ability to communicate in English is not supported by substance evidence. (Tr. 31). Here, the ALJ proceeded to the fourth step of the sequential evaluation and did not properly consider Plaintiff's ability to speak English

13

in making the final determination.  While Plaintiff's ability to speak English does not establish

disability, the ALJ was required to consider her English abilities as a vocational factor of

education.  20 C.F.R. § 404.1564(b); *see Nunez*, 2017 WL 942991, at *4.

While the ALJ summarily concludes, "[t]he claimant has at least a high school education

and is able to communicate in English (20 CFR 404.1564 and 416.964) (Exhibit B2E)," he failed

to provide any basis for the conclusion that Plaintiff can communicate in English.  (*See* Tr. 31).

During the hearing, Plaintiff, through a translator, attested that she did not speak any English.

(*Id*. at 48).  Plaintiff also maintained all her previous employers communicated to her through a

translator.  (*Id*.).

Moreover, Exhibit B2E, which the ALJ cites in support of his determination that Plaintiff

can communicate in English, weakens his conclusion.  (*See id*. at 304-313).  Exhibit B2E

contains a disability report dated January 28, 2019 in which Plaintiff reported that she could not

speak, understand, read, or write more than her name in English.  (*Id*. at 304).  Further, the report

indicates Plaintiff provided a contact member of a family member who could speak English in

response to her claim that she did not speak any English.  (*Id*.).  The disability report also

contains a handwritten form in English and includes a signature by an employee under the

heading "name of person completing this form."  (*Id*. at 322).  Further, treatment notes by Dr.

Patricia L. Sareh dated May 19, 2014, refer to Plaintiff as a "Spanish speaking patient."  (*Id*. at

414).  Thus, the record undermines the ALJ's apparent conclusion that Plaintiff has the ability to

communicate in English.  (*Id*. at 31).

As a final point, the cases that the Commissioner relies on in support of his argument that

the ALJ properly concluded that Plaintiff could communicate in English, are distinguishable

from the instant case.  (Doc. 23 at 60); *see Rodriguez v. Comm'r of Soc. Sec*., No. 2:15-cv-585-

FtM-CM, 2017 WL 511226, at *3 (M.D. Fla. Feb. 8, 2017) (finding the ALJ did not error by making findings about Plaintiff's ability to speak and understand English when Plaintiff could "read a little bit" and was able to understand road signs in English and noting the ALJ properly accounted for Plaintiff's limited English in the ALJ's hypothetical question to the VE); *see also Davila v. Colvin*, No. 8:12-cv-2334-T-TGW, 2014 WL 495525, at * 11 (M.D. Fla. Feb. 5, 2014) (holding the ALJ could find Plaintiff literate when "plaintiff testified that he understands some English, can read short notes in English, and the plaintiff's work history indicated an ability to carry out different jobs in several states of this predominantly English-speaking country" and affirming the ALJ's decision).  In contrast, here Plaintiff testified she does not speak any English, cannot read in English, and has needed a translator at all times while working.  (Tr. 47-48, 304).

Thus, the Undersigned finds because the hypotheticals the ALJ posed to the VE failed to include all of Plaintiff's impairments, the ALJ's decision is not supported by substantial evidence.  *See Wilson*, 284 F.3d at 1227 (explaining in order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments).  In light of this, the Undersigned recommends this case be reversed and remanded to reconsider Plaintiff's capacity to communicate in English.

D.      **Whether the ALJ properly assessed the Claimant's alleged symptoms and limitations.**

Plaintiff argues that the ALJ's RFC determination is insufficient.  (Doc. 23 at 64). Plaintiff focuses on two arguments.  One being that the RFC failed to specify the frequency of Plaintiff's need to alternate sitting and standing.  (*Id*.).  The second being that the RFC failed to sufficiently account for Plaintiff's manipulative limitations.  (*Id*. 63-64).  The Commissioner

responds arguing the ALJ's RFC finding is supported by substantial evidence and properly discussed the relevant evidence in accordance with the regulations.  (*Id.* at 66).

As to Plaintiff's first argument regarding the frequency of her need to alternate sitting and standing, the Undersigned notes a court in this district has found when an ALJ's RFC does not specify the frequency which Plaintiff could alternate sitting and standing, that the obvious interpretation is a sit/stand option at will.  *See Cerniglia v. Astrue*, No. 2:09-cv-631-FtM-DNF, 2010 WL 5093851, at *10 (M.D. Fla. Dec. 8, 2010).  Similarly to this case, the plaintiff in *Cerniglia* argued the ALJ was required to specify the frequency with which she could alternate sitting and standing.  *See id.*  In response the Court stated:

> The ALJ's "RFC" finding and hypothetical question to the "VE" is that the ALJ contemplated a sit/stand option at will.  Plaintiff failed to suggest in any way that the ALJ's 'RFC' finding and hypothetical question could possibly be interpreted in any other way.  Thus, the "VE" did not ask the ALJ to clarify the frequency with which Plaintiff needed to sit or stand, indicating that the "VE" did not need further information to identify jobs Plaintiff could perform.

*Id.*

Further, in a case involving a claimant who alleged the ALJ's hypothetical was insufficient for failing to include a frequency with which he could alternate sitting and standing, the Eleventh Circuit stated, "[a]lthough the ALJ failed to specify the frequency that [the claimant] needed to change his sit/stand option, the reasonable implication of the ALJ's description was that the sit/stand option was at [the claimant's] own volition."  *Williams v. Barnhart*, 140 F. App'x 932, 937 (11th Cir.2005).

The Undersigned agrees with this reasoning.  Here, while Plaintiff argues the RFC is deficient for failing to provide a more specific sit-stand instruction to the VE, the Undersigned finds the ALJ's RFC finding that "[t]he claimant must have the option to alternate sitting and

standing" contemplated a sit-stand option at will.  (*See* Tr. 26); *see also Cerniglia*, 2010 WL 5093851, at *10; *Williams*, 140 F. App'x at 937.

Moreover, similarly to *Cernglia*, the VE in this case did not ask the ALJ to clarify the ALJ's sit/stand instruction, indicating he did not need any additional information in order to identify jobs Plaintiff could perform.  *See* 2010 WL 5093851, at *10.  Thus, the Undersigned finds the there was no error in the ALJ's RFC determination as to sit/stand option and remand is not appropriate on this basis.

Further, as to Plaintiff's second argument regarding the ALJ's failure to include manipulative limitations in his RFC, the Undersigned finds Plaintiff's argument unpersuasive.  In evaluating whether the ALJ's decision to not include a manipulative limitation is supported by substantial evidence, the court evaluates if the record is adequate to support the ALJ's conclusion.  *See Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)) ("Review of a case such as the one before us [Social Security Appeal] is exceedingly limited.  This court's sole function is to determine whether there is substantial evidence in the record to support the conclusion Secretary of Health and Human Services.").  Here, in determining the RFC, the ALJ considered all Plaintiff's symptoms, the extent the symptoms were consistent with medical evidence, and opinion evidence.  (Tr. 27).  The ALJ explains his findings as follows:

> On a pain questionnaire the claimant reported she has pain that radiates from her shoulders into her hands, she has no strength in her hands, she has leg pain that radiates to her knees and down  to her ankles.  She added this pain is aggravated by sitting, standing, walking, and reaching (Exhibit B4E).   On a function report, the claimant reported her impairments affected  her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember, complete tasks, concentrate, and use her hands.  As for activities of daily living, the claimant admitted she could complete such tasks as attending to her personal care, caring for her daughter, preparing light meals, driving, shopping, managing her

> finances, and spending time with family (Hearing Testimony; Exhibit B3E).   Here, the claimant has described daily activities that are *inconsistent* with her allegations of disabling symptoms and limitations. Turning to the medical evidence, signs and findings upon objective examination simply do not reflect the degree of limitations alleged by the claimant . . . As a result, the claimant is limited to light exertion with a sit, stand option.

> However, the objective studies do not indicate a more restrictive functional capacity.  There has not been an additional study to suggest a worsening of her impairments from an objective standpoint. Additionally, despite her complaints of neuropathy  and tingling  in the hands and feet, the neurologic findings have been largely normal.

(Tr. 27-28).

While Plaintiff argues her allegations of pain and numbness in her hands and shoulders are supported by the record and therefore the ALJ erred in not including manipulative limitations in the RFC, the Undersigned finds the ALJ properly evaluated the evidence in making his determination to not include a such a limitation.  (*See* Doc. 23 at 63-64; Tr. 27-28).  Plaintiff argues the jobs cited—office helper, assembler-arranger, and assembler of small parts— require frequent reaching, handling, and fingering, however the ALJ considered Plaintiff's limitations and still concluded that *despite* Plaintiff's reports of pain and weakness, the Plaintiff's descriptions of her daily activities were "*inconsistent* with her allegations of disabling symptoms and limitations."  (Tr. 27).  Thus, the Undersigned recommends the Commissioner's decision be affirmed as to this issue.

### E.      Whether the ALJ properly assessed the Claimants alleged symptoms and limitations

Plaintiff next argues the ALJ improperly discounted her self-reported symptoms and limitations.  (Doc. 23 at 66).  Moreover, she maintains that contrary to the ALJ's conclusion, her allegations of pain were consistent with the objective medical evidence.  (*Id*.).  In response, the

Commissioner argues that the ALJ properly considered Plaintiff's subjective statements in assessing her RFC and substantial evidence supports the ALJ's determination that Plaintiff's subjective statements regarding the intensity, persistence, and functionally limiting effects of her alleged symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (*Id*. at 72; Tr. 29).

The Eleventh Circuit applies a three-part pain standard whenever a claimant asserts disability through testimony of pain or other subjective symptoms.  The standard requires:  (1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such a severity that it can be reasonably be expected to cause the alleged pain.  *Kelly v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  If the objective medical evidence does not confirm the severity of the alleged symptoms but indicates that the claimant's impairment could reasonably be expected to produce some degree of pain and other symptoms, the ALJ evaluates the intensity and persistence of the claimant's symptoms and their effect on her ability to work.  *See* 20 C.F.R. § 404.1529.  The ALJ will consider the objective medical evidence, the claimant's daily activities, treatment and medications received, and other factors concerning functional limitations and restrictions due to pain.  *See id*.

The Undersigned finds substantial evidence supports the ALJ's determination that Plaintiff's subjective complaints of pain and other limitations statements were not consistent with the medical evidence and other evidence in the record.  (*See* Tr. 29).  While Plaintiff argues her allegations regarding her symptoms are consistent with the objective medical evidence, she fails to cite any record or medical evidence in support of this contention.  (Doc. 23 at 68-71).  She

also provides no support for her argument that the ALJ discounted Plaintiff's disabling impairments in making his determination.  (*Id*. at 71).

In his decision, the ALJ thoroughly discussed the medical evidence of record and explained his reasoning in finding that the evidence does not entirely support Plaintiff's subjective statements.  (Tr. 27-30).  Although Plaintiff was diagnosed with various conditions, diagnoses do not establish work-related limitations.  *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005); *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005).  The ALJ properly evaluated the Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms and found them to be not as restrictive as Plaintiff claims.  (Tr. 29).  In making this finding, the ALJ considered Plaintiff's daily activity and interactions, such as "preparing light meals, going to the grocery store, driving, performing self-care activities such as dressing and bathing, caring for a minor child, socializing with others, and displaying sufficient concentration and attention to manage her finances."  (Tr. 51-52, 174, 315-322).  The ALJ concluded these activities were not entirely consistent with Plaintiff's allegations of functional limitations.  (Tr. 29).  In making his determination the ALJ also considered opinion evidence of several medical professionals.  (Tr. 29).  The examinations conducted by the State agency medical consultant and the two State agency psychological consultants concluded that Plaintiff was able to perform light work, understand and follow simple and some complex instructions, make simple work-related decisions, engage in social interactions that are infrequent and brief, and adapt to routine changes that are implemented minimally.  (Tr. 29; Exs. B9A, Bl0A, B3A, B4A).  Therefore, the Undersigned finds substantial evidence supports the ALJ's determination that Plaintiff's allegations regarding her symptoms and limitations were not entirely consistent

with the other record evidence. Accordingly, the Undersigned find no error in the ALJ's treatment of Plaintiff's self-reported symptoms and limitations.

## III.    Conclusion

Upon consideration of the submission of the parties and the administrative record, the Undersigned finds that the decision of the Commissioner is not supported by substantial evidence for the sole reason that the ALJ failed to properly evaluate the claimant's capacity to communicate in English.

Accordingly, it is **IT IS RESPECTFULLY RECOMMENDED:**

The decision of the Commissioner be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to properly evaluate claimant's capacity to communicate in English.

Respectfully recommended in Chambers in Ft. Myers, Florida on February 20, 2020.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:
Counsel of Record
Unrepresented Parties